# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00082-CR

**Charles Ablanedo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 2021196, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from appellant Charles Ablanedo's conviction for possession of more than 28 grams of a controlled substance, dihydrocodeinone, the generic form of Vicodin. *See* Tex. Health & Safety Code Ann. §§ 481.104(a)(4), 481.117(c) (West 2003). According to the State, eighty-five of these pills were discovered in appellant's possession when he was stopped for a traffic violation. Appellant urges that his conviction should be reversed because (1) the evidence is legally insufficient and (2) the trial court erred in admitting the pills and the chemical analysis of the pills. Appellant's issues are based on his claims that (a) the State failed to "affirmatively link" appellant to the pills because it failed to establish that appellant had ownership of, knowledge of, or control

over the pills, (b) the arresting officer was unable to testify that the pills discovered in the vehicle were the same pills introduced at trial, and (c) the State's chemist lacked the requisite knowledge to show that the methodology used for testing the pills was reliable. We will affirm.

## BACKGROUND

On March 31, 2002, Sheriff's Deputy Michael Bozell observed appellant driving with an inoperative taillight and initiated a traffic stop on that basis. While speaking with appellant, who was the sole occupant of the vehicle, Bozell saw in plain view a partially empty Crown Royal bottle. Because Bozell knew that appellant was not yet twenty-one years old,[1] and appellant admitted that the bottle was his, Bozell detained him for being a minor in possession of alcohol. *See* Tex. Alco. Bev. Code Ann. § 106.05 (West Supp. 2005). Upon conducting a search of the vehicle's center console, Bozell located and retrieved a plastic bag filled with a green leafy substance and an unlabeled prescription bottle containing many white pills.[2] Appellant was then arrested, and the automobile was impounded. Before turning the pills in to the evidence section of the Sheriff's Department, Bozell counted that there were eighty-five pills.

---

[1] Bozell testified that he believed he knew appellant's age based on a review of his driver's license, but that he might have obtained this knowledge through questioning appellant. Appellant does not dispute that he was only twenty years old on the date in question.

[2] Appellant does not challenge the legality of the search. Facts regarding the events leading up to and during the search, including statements made by appellant about the contents of Bozell's discovery, were suppressed as improper custodial interrogation because appellant was not read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The State does not challenge the propriety of this suppression. Accordingly, we do not consider this evidence.

2

The pills were subsequently analyzed by Joel Budge, a chemist for the Texas Department of Public Safety. Budge testified that he retrieved the pills from their secured location in the Department's evidence vault. He confirmed that the evidence he retrieved was a sealed envelope, which was marked with the unique laboratory number assigned to appellant's case and contained an unlabeled prescription bottle that had eighty-five white pills inside. Budge subjected these pills to a "gas chromatograph mass spectrometer" test, which breaks down the components of the substance and creates a chemical spectrum. The resulting spectrum is then compared to the "known spectrum" of the chemical that the at-issue substance is suspected to be. Budge reported that the chemical spectrum of the tested pills matched the known spectrum of dihydrocodeinone, the generic form of Vicodin.

Appellant was indicted for the third-degree offense of "intentionally and knowingly possess[ing] a controlled substance, namely, . . . dihydrocodeinone . . . in an amount of 28 grams or more." *See* Tex. Health & Safety Code Ann. §§ 481.104(a)(4), 481.117(c). Appellant pled not guilty and waived his right to a jury trial. A bench trial occurred in which appellant presented no witnesses and the State presented two witnesses, Deputy Bozell and State chemist Budge. The trial court adjudged appellant guilty of the charged offense and sentenced appellant to six years confinement, which was probated for that time period. *See* Tex. Code Crim. Proc. Ann. art. 42.12 (West Supp. 2005) ("Community Supervision"). Appellant filed a motion for new trial, which was overruled, and then appealed to this Court.

3

# ANALYSIS

## Legal Sufficiency

In his first issue, appellant contends that there was not legally sufficient evidence to support his conviction for possession of a controlled substance because the State could neither affirmatively link appellant to the pills nor establish that the pills introduced at trial were the same ones discovered in his possession.

When deciding whether evidence is sufficient to support a conviction, we must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Id*. Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Id*. at 405-06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Such affirmative links need to be established only when the accused was "not in exclusive possession of the place where the substance is found." *Id*. at 406 & n.18; *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).

The intentional and knowing possession of a controlled substance does not turn on whether the controlled substance is in plain view. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). This affirmative link can be established by showing additional facts and circumstances

4

that demonstrate the accused's knowledge and control of the contraband, *Norman v. State*, 588 S.W.2d 340, 342-43 (Tex. Crim. App. 1979), including that the narcotic was conveniently accessible to the accused, *Hahn v. State*, 502 S.W.2d 724, 725 (Tex. Crim. App. 1973); that the accused was the driver of the automobile in which the contraband was found, *Aldridge v. State*, 482 S.W.2d 171, 173 (Tex. Crim. App. 1972); and that the contraband was found on the same side of the car seat as the accused was sitting, *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981), and *Orosco v. State*, 298 S.W.2d 134, 136 (Tex. Crim. App. 1957). In deciding whether the evidence sufficiently establishes an affirmative link between the accused and the contraband, the trier of fact—which is the district court in a bench trial—is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Poindexter*, 153 S.W.3d at 406; *see also State v. Taylor*, 886 S.W.2d 262, 265 (Tex. Crim. App. 1994) (court is trier of fact in bench trial).

The evidence in this case was sufficient to permit a reasonable trier of fact to conclude beyond a reasonable doubt that appellant intentionally and knowingly possessed more than 28 grams of dihydrocodeinone. Appellant was the driver and sole occupant of the vehicle at the time of the offense. Although he presented a certificate of title showing he was not the owner of the vehicle, appellant concedes that he was in exclusive possession and control of the vehicle during the time in question. Significantly, appellant does not assert that any other person had been in possession or control of the vehicle or even that anyone else had recently been a passenger in the vehicle. And, when the vehicle was impounded, appellant did not request that it be released to anyone else, although this option was expressly provided on the impoundment form that he filled out. The bottle of pills was discovered in the center console, which was immediately accessible to

5

appellant from his driver's seat. Additionally, appellant does not claim that he was unaware that the pills were a controlled substance. These facts and circumstances demonstrate an affirmative link between appellant and the unlabeled prescription bottle containing eighty-five white pills that was found in his possession. *See Hahn*, 502 S.W.2d at 725; *Aldridge*, 482 S.W.2d at 173; *Orosco*, 298 S.W.2d at 136.

Appellant also challenges his conviction on the grounds that, even if an affirmative link exists between himself and these pills, the evidence does not sufficiently establish that the pills discovered in his possession were the same ones that the State introduced at trial. This argument, however, is duplicative of appellant's second issue, which challenges the admissibility of the evidence based on its chain of custody.[3] We therefore reserve discussion of this issue for the following section.

Appellant's first issue is overruled.

**Admission of Evidence**

Appellant asserts in his second and third issues that the trial court erred in admitting the bottle of pills and the chemical analysis of those pills because the chain of custody was not sufficiently established and because the chemist lacked the requisite knowledge to show the reliability of the analysis he performed. We consider each issue in turn.

---

[3] Admittedly, chain of custody issues present mixed questions of legal sufficiency and admissibility because the question of whether the evidence is admissible depends on the proof offered to support its authenticity. *See Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd). This does not require the same issue to be analyzed twice, however, because one discussion satisfies both inquiries.

*Chain of custody*

As a condition precedent to the admission of evidence, Texas Rule of Evidence 901 requires that evidence be authenticated—*i.e.*, that sufficient proof be offered "to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901. Rule 901 does not require any particular standard of proof but instead requires only that the trial court be satisfied that the evidence is genuine. *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd). The sufficiency of an evidentiary predicate is within the trial court's discretion, and we will not overturn the court's decision to admit the evidence unless we find that the trial court abused its discretion. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990); *Smith v. State*, 683 S.W.2d 393, 405 (Tex. Crim. App. 1984).

As the proponent, the State may authenticate an item of evidence that lacks unique or distinctive characteristics by establishing its chain of custody, which shows that the item presented at trial is the same one that played a role in the events at issue. *Moore v. State*, 821 S.W.2d 429, 431 (Tex. App.—Waco 1991, no pet.). To support admission, the State must prove only the beginning and end of the chain of custody, particularly when the chain ends at a laboratory. *Martinez v. State*, No. 01-04-00715-CR, 2005 Tex. App. LEXIS 8678, at *5 (Tex. App.—Houston [1st Dist.], Oct. 20, 2005, no pet. h.); *Porter v. State*, 969 S.W.2d 60, 66 (Tex. App.—Austin 1998, pet. ref'd). The State is not required to provide a moment-by-moment account of the whereabouts of evidence from the instant it is seized until it is introduced at trial. *Reed v. State*, 158 S.W.3d 44, 52 (Tex. App.—Houston [14th Dist.], pet. ref'd). Absent evidence of tampering, any gaps or minor

7

theoretical breaches in the chain go to the weight, rather than the admissibility, of the evidence. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). Moreover, conflicting testimony as to the type of container the evidence is placed in does not amount to a break in the chain. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989).

Deputy Bozell testified that he seized from appellant eighty-five white pills in an unlabeled prescription bottle and, following appellant's arrest that evening, turned the evidence in to the "evidence section" of the Sheriff's Department at its primary location, the Gault building. Bozell generated an offense report, which listed the same identifying information as the submission sheet that was attached to the evidence admitted at trial, including a specific number assigned to appellant's case. The State's chemist, Budge, testified that he retrieved the unlabeled prescription bottle containing eighty-five white pills from the Department's secured vault and that the evidence was sealed and marked with the unique identifying information when he retrieved it. Thereafter, Budge resealed the evidence and labeled the outer envelope with his initials, the date, and the assigned laboratory number. When the pills were presented at trial, Budge testified that he recognized the envelope based on these markings that were made in his handwriting. When the envelope was unsealed, Deputy Bozell testified that its contents—the unlabeled prescription bottle with eighty-five white pills inside—appeared to be the same bottle and pills that he seized from appellant on the night of the offense. Appellant does not claim that any tampering had occurred. Through the testimony of Bozell and Budge, the State established the chain of custody by proving both its beginning and its end, which was at the State's laboratory. *See Martinez*, 2005 Tex. App. LEXIS 8678, at *5; *Porter*, 969 S.W.2d at 66.

Nonetheless, appellant raises several challenges to the adequacy of their testimony. First, appellant urges that Bozell could not establish the chain of custody based on his testimony that the envelope that the pill bottle appeared in at trial was not the same container in which Bozell submitted the evidence. This argument is without merit because conflicting testimony as to the type of container the evidence is placed in does not amount to a break in the chain. *Stoker*, 788 S.W.2d at 10. The record demonstrates that it is standard procedure for evidence to be submitted in one container and then placed in a new container upon laboratory processing. Unique identification numbers are assigned to each item of evidence in the State's system so that the evidence may always be tracked and identified with a particular case. Both Bozell and Budge testified that such identification numbers were marked on the various containers used in this case. Thus, the fact that the original container was replaced with a new one at the laboratory does not cast doubt on the authenticity of the evidence.

Appellant also challenges Bozell's testimony because he could not say "positively" that the pills at trial were the same ones he seized from appellant, although he testified that the unlabeled prescription bottle containing eighty-five white pills presented at trial appeared to be the same one that he had seized from appellant and submitted to the Department. Nothing in Rule 901 requires that a single witness testify with absolute certainty that the evidence is authentic. *See* Tex. R. Evid. 901 (providing "illustrations" of authentication procedures). Bozell testified about the evidence as it was seized and submitted. Budge testified about the evidence after it was submitted until it was analyzed and then presented in court. The identifying number assigned to the evidence upon submission connects the beginning and end of this chain because, at each stage, the container

9

holding the evidence was marked with this identifier. It is irrelevant that the original container was marked by the intake officer rather than Bozell. Even if this were considered a break in the chain, no allegations of tampering have been made and, thus, it would impact only the weight afforded to the evidence, not its admissibility. *Lagrone*, 942 S.W.2d at 617; *Reed*, 158 S.W.3d at 52.

The trial court did not abuse its discretion in determining that Bozell's and Budge's testimony satisfied the test for authentication under Rule 901; given their testimony, a reasonable fact-finder could conclude that the pills seized from appellant were the same ones introduced at trial. Thus, it was not error for the trial court to admit the unlabeled prescription bottle containing eighty-five white pills and the chemical analysis showing those pills to be dihydrocodeinone. Appellant's second issue is overruled.

### *Reliability of expert testimony*

Appellant further challenges the admission of this evidence on the grounds that the State's chemist, Budge, was unable to establish the reliability of the chemical analysis because he did not know the original source of the "known spectrum" that was used to identify the substance as dihydrocodeinone.

Texas Rule of Evidence 702 governs the admissibility of expert testimony. Tex. R. Evid. 702. As a threshold requirement to the admission of expert testimony, the court must be satisfied that the evidence is relevant and reliable. *Russeau v. State*, 171 S.W.3d 871, 874 (Tex. Crim. App. 2005). In a criminal case, the level of proof required of the evidence's relevance and reliability is "clear and convincing." *Id*. at 875. Through the "*Daubert*, *Robinson*, and *Kelly*" trilogy of cases, the high courts have developed several non-exclusive factors to analyze whether the

evidence meets this standard.[4]  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-95 (1993); *E.I. du Pont de Nemours & Co., Inc., v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  Essentially, the proponent is required to convince the court, as the gatekeeper, that: (1) the scientific theory upon which the evidence is based is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied in this instance.  *State v. Medrano*, 127 S.W.3d 781, 784 (Tex. Crim. App. 2004).  A trial court's ruling on the admissibility of scientific expert testimony will not be reversed absent an abuse of discretion.  *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Here, appellant does not challenge the expert's qualifications or the validity of the expert's theory or methodology.  Rather, appellant's challenge to the expert's testimony is confined to the third prong of the inquiry—whether the expert properly applied the technique in this case.  Budge employed the following technique to identify the chemical nature of the pills found in appellant's possession:  After analyzing the pills' physical characteristics (that they were white with some unique markings), Budge used the Poison Control Board's database to identify dihydrocodeinone as the likely match.  Budge then subjected the pills to a "gas chromatograph mass

---

[4] Such factors include (a) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community; (b) the expert's qualifications; (c) the existence of literature supporting or rejecting the underlying scientific theory and technique; (d) the potential rate of error of the technique; and (e) the clarity with which the underlying scientific technique can be explained to the court.  *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

spectrometer test," which breaks down the substance's components, demonstrating the substance's "chemical spectrum." Budge obtained the "known spectrum" of dihydrocodeinone and compared it to the resulting spectrum. Because the known spectrum matched the resulting spectrum, Budge concluded the pills were dihydrocodeinone, a generic form of Vicodin.

Budge testified that he obtained the known spectrum "in house," meaning that it was created in the Department's laboratory from a substance known to be dihydrocodeinone. The Department purchases the substances from reputable pharmaceutical companies that have established business relationships with the Department. He explained that when the laboratory initially develops a known spectrum, it conducts an "extensive literary search to make sure that's what it is." Once the laboratory has completed this process, the known spectrum is catalogued "in house" and can be used as a "standard" in later cases. Although Budge testified that he did not create the laboratory's known spectrum for dihydrocodeinone, he was confident in its accuracy because the procedures he described are standard operating procedures used in the Department's regular course of business "in every case where [there is] a possibility of [the spectrum] coming up as a controlled substance."

Appellant attacks the reliability of Budge's opinion by claiming that Budge lacked sufficient personal knowledge about the known spectrum. The reliability standard, however, does not require that the expert have personal knowledge of each piece of information used in his methodology; an expert may "rel[y] in whole or in part on information of which he has no personal knowledge" as long as he "has a sufficient basis for his opinion." *Aguilar v. State*, 887 S.W.2d 27, 29 (Tex. Crim. App. 1994); *Kelly*, 824 S.W.2d at 573. Rule 703 expressly permits an expert to base his opinion on facts or data made known to him by another source and, if such facts or data are "of

a type reasonably relied on by experts in the particular field in forming opinions or inferences on the subject," the expert can rely on them even if they are inadmissible. Tex. R. Evid. 703. The court may consider the expert's own testimony about the data reasonably relied on by other experts in the field. *See Souris v. Robinson*, 725 S.W.2d 339, 341-42 (Tex. App.—Houston [14th Dist.] 1987, no pet.). The court of criminal appeals has noted that "[i]t is rare indeed that an expert can give an opinion without relying to some extent upon information furnished him by others. Moreover, 'it is quite reasonable for a chemist to review another chemist's analysis when forming an opinion as to the veracity of the latter's test results.'" *Cole v. State*, 839 S.W.2d 798, 814-15 n.3 (Tex. Crim. App. 1992) (Maloney, J., concurring) (citations omitted).

Budge explained that the known standard he used in this case was created using a substance from a reliable company, pursuant to the Department's standard procedures, and was cataloged in the Department's lab to be used in the chemists' regular course of business of testing chemical spectrums. Given this testimony and the authority interpreting Rules 702 and 703, it was not an abuse of discretion for the trial court to determine that Budge's testimony was reliably based on the proper application of chemical testing techniques and, therefore, to admit the bottle of pills and the chemical analysis of those pills. Appellant's third issue is overruled.

## CONCLUSION

Having determined that (1) the evidence was legally sufficient to establish an affirmative link between appellant and the eighty-five white pills found in his possession and that (2) the trial court did not err in admitting the pills or their chemical analysis because the State

13

established the chain of custody and because the expert's testimony was reliable, we affirm appellant's conviction for possession of a controlled substance weighing more than 28 grams.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   December 1, 2005

Do Not Publish