Gregory Brian PORTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–96–00465–CR.

Court of Appeals of Texas, Austin.

April 9, 1998.

F.N. "Trey" Brown, III, Law Offices of Mock & Brown, Christine Byrd Webb, Burnet, for Appellant.

Sam Oatman, District Attorney, Llano, for State.

Before POWERS, JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Appellant Gregory Brian Porter was involved in a head-on car collision in which another driver, Michael Gourley, was killed. A jury convicted him of manslaughter under a two-count indictment alleging intoxication manslaughter and manslaughter and sentenced him to twenty years' imprisonment. *See* Tex. Penal Code Ann. §§ 19.04, 49.08, 12.33 (West 1994). Porter appeals his conviction claiming that the evidence is legally insufficient to support a conviction of manslaughter, and that the trial court erred by allowing in certain evidence. He also contends that the trial court erred in denying his motion for a new trial based on improper jury discussions. We will affirm.

## BACKGROUND

In the early morning of March 10, 1995, emergency personnel were called to the scene of a head-on collision on U.S. Highway 281. A vehicle driven by appellant Porter had collided with a pick-up driven by Michael Gourley. It is undisputed that the collision occurred in Gourley's lane. Appellant was not seriously injured in the accident, but Gourley was killed by the impact.

Porter was transported by ambulance to Brackenridge Hospital in Austin. En route, the medical technician found a spoon and

syringe in appellant's sock, which he turned over to law enforcement personnel at the hospital. As is routine in accidents involving fatalities, the state trooper at the scene called a sergeant to meet appellant in the hospital emergency room. Sergeant Owen responded and met appellant at the hospital. After interacting with appellant, the sergeant placed him under arrest for driving while intoxicated and ordered a blood test taken, as required by statute. *See* Act of June 19, 1993, 73d Leg., R.S., ch. 902, § 1.11, 1993 Tex. Gen. Laws 3586, 3703 (Tex.Rev.Civ.Stat. art. 6701*l*–5, § 3(i), since repealed and codified at Tex. Transp. Code Ann. § 724.012 (West 1998)). During the course of his treatment, a urine sample was also taken by emergency room personnel and tested in the hospital lab. The blood test indicated the presence of methamphetamines, diazepam, and nordiazepam; the urine test revealed the presence of benzol, amphetamine, and cocaine.

During the course of investigating the accident several days later the trooper recovered from an acquaintance of Porter a telephone answering machine tape which supposedly contained Porter's voice, recorded the night preceding the accident. In its case against Porter, the State offered the results of the blood and urine tests, the contents of the answering machine tape, and the spoon and syringe recovered in the ambulance, all of which were admitted into evidence over defense objections. The jury acquitted Porter of intoxication manslaughter but convicted him of manslaughter as alleged in count two of the indictment.

Porter appeals in six points of error. In the first point, he requests an acquittal based on legal insufficiency of the evidence. In points of error two through five, he argues that the trial court erred in allowing the blood test, urine test, tape, spoon and syringe into evidence. In his sixth point of error, he argues that the trial court erred in overruling his motion for a new trial because alleged

jury discussions of parole laws render the punishment imposed invalid.

## DISCUSSION

### Directed Verdict

In his first point of error, Porter claims that the trial court erred in denying his motion for a directed verdict because there was insufficient evidence to support a conviction for manslaughter as alleged in the indictment. We find ample evidence to support the jury's verdict.[1]

Appellant specifically attacks the evidence by arguing there is no evidence to support a finding of recklessness because the element of recklessness in the second count of the indictment refers only to the moment in which he crossed over the center line of the highway. He argues the evidence does not show that he was across the line long enough to be aware of a risk, or even that he knew he crossed the line and was aware of the risk at all. As a threshold matter, we reject this narrow reading of the indictment. The second count of the indictment alleges that Porter did "recklessly cause the death of an individual ... by driving and allowing said motor vehicle to cross over the highway center stripe." The jury could properly apply recklessness to the act of driving generally, and need not have focused its attention only to the instant before the collision or to whether or not appellant knew he was across the line. It would suffice that the jury concluded that he knew he was driving.

A challenge to the denial of a motion for directed verdict is essentially a challenge to the legal sufficiency of the evidence. *See Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim.App.1993). Evidence is legally sufficient when, viewed in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A reviewing court's duty is not

---

1. Though Porter's points of error two through five go to admissibility of certain evidence, that is immaterial to a sufficiency of the evidence review. In reviewing the sufficiency of the evidence, an appellate court must look at all of the evidence that was before the jury, whether properly or improperly admitted, so that it may assess the jury verdict from the jury's perspective. *See Miles v. State*, 918 S.W.2d 511, 512 (Tex.Crim. App.1996).

to reweigh the evidence from reading a cold record but to "position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Williams v. State*, 937 S.W.2d 479, 483 (Tex.Crim.App.1996) (citing *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex.Crim.App.1995) and *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988)).

Viewing the evidence that was before the jury in the light most favorable to the prosecution, we find evidence sufficient to support a conviction for manslaughter. It is undisputed that the collision occurred on the deceased's side of the road. The State offered opinion testimony from officers at the scene and an accident expert that appellant was on the wrong side of the road in the moments before the accident. Further, the jury heard an answering machine tape recorded in the early morning before the accident on which the appellant states that he knows he should not be driving and that he is "very much fatigued." Finally, the jury had evidence before it that blood and urine specimens taken at the hospital following the accident indicated the presence of some controlled substances in Porter's system, and that a spoon and syringe were recovered from his person shortly after the accident. While the jury acquitted Porter of intoxication manslaughter, it may have considered residual effects of such substances when assessing appellant's behavior and state of mind on the night of the accident.

Based on the foregoing evidence, a rational jury could have found beyond a reasonable doubt that Porter recklessly caused the death of an individual by driving and allowing his vehicle to cross over the center lane into oncoming traffic.[2] We overrule point of error one.

### Admission of Evidence

 Appellant's points of error two through five allege that the trial court erred in admitting the blood and urine specimens,

audio tape, and the syringe and spoon found on appellant in the ambulance after the accident. Evidentiary rulings are generally reviewed under an abuse of discretion standard. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *State v. Comeaux*, 786 S.W.2d 480 (Tex.App.—Austin 1990), *aff'd*, 818 S.W.2d 46 (Tex.Crim.App.1991). As the trier of fact at the hearing on the motion to suppress evidence, the trial judge is free to believe or disbelieve all or any part of any witness's testimony. The trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony, and the reasons behind the trial court's exercise of its judgment in admitting or denying evidence will not create reversible error if the decision itself, regardless of any purported basis, does not exceed the limits of the court's discretion. *Comeaux*, 786 S.W.2d at 481. Therefore we overturn the trial court's decision only if it clearly abused this discretion and we find that the error was harmful in that it impaired a substantial right of the defendant. *See* Tex.R.App. P. 44.2. However, in reviewing a trial court ruling involving an "application of law to fact question" or a "mixed question of law and fact" we grant the trial court less deference and review the issue de novo when the resolution of such questions are not based on witness demeanor and credibility. *Guzman*, 955 S.W.2d at 87–89.

 In his second point of error, appellant contends that the admission of blood test results taken at the hospital was error because the blood was drawn following an illegal arrest. The thrust of appellant's argument is that Sergeant Owen went to the hospital with the expectation of obtaining a blood sample and that the arrest was, in essence, a pretext for obtaining the sample.

Porter claims that Sergeant Owen needed an arrest warrant in order to arrest him because Owen did not actually see Porter

---

**2.** Porter also argues that evidence of fatigue and intoxication cannot be considered in support of the second count of manslaughter because the second count of the indictment does not specifically mention controlled substances or fatigue. Again, we reject such a narrow reading of the indictment. Evidence of intoxication and fatigue was placed before the jury in support of an

indictment which alleged both intoxication manslaughter and manslaughter. That the jury acquitted on the intoxication count does not preclude its consideration of the effects, short of intoxication, of such substances in assessing appellant's conduct, nor must it disregard evidence that the appellant admitted to being tired on the night of the accident.

driving, and the trooper who investigated the accident and knew Porter was driving was not of the opinion that Porter was intoxicated at the scene. However, if Sergeant Owen had probable cause to arrest appellant for any offense committed in the sergeant's presence, then a warrant was unnecessary and the arrest was proper. Tex.Code Crim. Proc. Ann. art. 14.01(b) (West 1977); *see Guzman,* 955 S.W.2d at 90–91; *Elliott v. State,* 908 S.W.2d 590, 592 (Tex.App.—Austin 1995, pet. ref'd).

When several officers are involved in the same criminal investigation, all of the information known to the cooperating officers at the time of the arrest is considered in determining probable cause. *Garrison v. State,* 726 S.W.2d 134, 137 (Tex.Crim.App. 1987); *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App.1982). Trooper Surovec, at the scene, knew that Porter was driving a car involved in an accident that resulted in Michael Gourley's death. Trooper Surovec testified it is routine whenever there is a fatal accident to enlist a sergeant's aid in investigating the accident. The trooper called Sergeant Owen in Austin to meet Porter at the hospital and instructed him to get a blood sample if Owen deemed it necessary. Before he placed Porter under arrest, Sergeant Owen observed him at the hospital engaged in rambling and paranoid conversation and making demands to talk to long-deceased Governor John Connally. The sergeant testified that Porter's speech was very loud at times and too slurred to comprehend. Additionally, Owens had been given the syringe and spoon discovered in Porter's sock. His observations in sum led him to believe Porter's physical and mental faculties were impaired. Sergeant Owen then read verbatim from the Department's DIC–24 form which begins, "You are under arrest for the offense of driving while intoxicated."

Porter correctly complains that his warrantless arrest for driving while intoxicated was not authorized by article 14.01 because *that offense* was not committed in Sergeant Owen's presence. *See* Tex.Code Crim. Proc. Ann. art. 14.01(b) (West 1977); *Elliott,* 908 S.W.2d at 592. However, if Owen had probable cause to arrest appellant for *any* offense

committed in his presence, such as public intoxication, the arrest was authorized by the statute. *Id.*

Based on his personal observations, Sergeant Owen formed the opinion that Porter was intoxicated. Trooper Surovec knew and communicated to Owen that Porter had been driving a vehicle involved in a fatal accident. This collective knowledge of the officers provided sufficient probable cause to arrest Porter for public intoxication as he may have been a danger to himself or to others. *See Carrasco v. State,* 712 S.W.2d 120 (Tex.Crim. App.1986) (officers who observed symptoms of intoxication in driver of car involved in one-car accident had sufficient probable cause to believe she posed danger to herself or others to arrest for public intoxication). Porter was arrested shortly after the car he was driving was involved in a fatal accident. Owen had reasonable grounds to believe that Porter was driving while intoxicated when the accident occurred. Under these circumstances the arrest, lawful on the basis of public intoxication, arose in part out of acts alleged to have been committed while driving a motor vehicle while intoxicated. *See Elliott,* 908 S.W.2d at 593.

Blood draws are mandatory from persons who are under arrest for *any* offense arising out of acts committed while operating a motor vehicle in a public place and whose intoxicated driving has led to the death or is expected to result in death to an individual, and such results are admissible into evidence in a subsequent trial for that offense. *See* Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 1.11, 1993 Tex. Gen. Laws 3586, 3703 (Tex. Rev.Civ.Stat. art. 6701*l*–5, § 3(i), since repealed and codified at Tex. Transp. Code Ann. § 724.012 (West 1998)); *see Elliott,* 908 S.W.2d at 592–93. We hold the trial court did not err in allowing the blood test results. Appellant's second point of error is overruled.

In his third point of error, appellant claims that the trial court erred in admitting into evidence a telephone answering machine tape because the State failed to lay a proper foundation, specifically that the tape was authentic, accurate, and reliable.

Rule 901 of the Texas Rules of Evidence provides that "the requirement of authentication ... as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex.R. Evid. 901(a). Here, the admissibility of the tape was dependent upon the State's ability to show that it depicted the voice of appellant on the night preceding the accident. The State, therefore, "was required to furnish testimony of some witness who could verify that the tape was what the State claimed it to be." *Kephart v. State*, 875 S.W.2d 319, 322 (Tex.Crim.App.1994).

During a hearing on the admissibility of the tape, the State produced the testimony of Anne Colom, who owned the answering machine that produced the recording at issue. Though Colom's testimony was confused at times, she did testify that (1) the tape was recorded in the early morning hours immediately preceding the accident; (2) she recognized the voice on the tape as Porter's; and (3) she removed the tape that morning and turned it over unaltered to Trooper Surovec within several days because she "thought it was relevant." Further, she testified that upon hearing the tape the morning of the evidentiary hearing, the voice on the tape was Porter's as she remembered it. This evidence supports a decision by the trial court to admit the tape, and we find no abuse of discretion.

Porter nonetheless refers to *Edwards v. State*, 551 S.W.2d 731 (Tex.Crim.App.1977), in arguing that the perfect operation of a recording device and the correctness of the recording must be established with virtual certainty, and that in his case the tape should be disallowed because the machine sometimes skipped or dragged voices. Appellant is correct in noting that the *Edwards* factors have been substantially incorporated by the Rules of Evidence. *See Kephart*, 875 S.W.2d at 320. However in *Stapleton v. State*, the Texas Court of Criminal Appeals specified that the test in *Edwards* was designed to meet the substantive concerns that " 'capability' of the recording device and 'authenticity' of the product" be assured. 868 S.W.2d 781, 785 (Tex.Crim.App.1993). The precision that

the seven prongs of the *Edwards* test suggest might be required in the introduction of such audio tape evidence is no longer applicable. "Simply stated, our rules supercede the *Edwards* test; it is no longer needed as an authoritative guide for admissibility of 'electronic recordings'...." *Id.* at 786. It is also certain that some of the requirements mentioned in that test are "inferable from certain testimony and need not be shown with the same particularity required for other mechanically required evidence." *Id.* The testimony from Colom that the tape was from her answering machine, that it was recorded at the time the State proposes it was, and that she turned it over to Trooper Surovec unaltered is an adequate foundation and supports the trial court's decision to admit the tape. Having found that a proper basis was laid for admission of the tape, we hold that any such imperfections in the tape go to the weight, not the admissibility, of the evidence. Appellant's point of error three is overruled.

■ In his fourth point of error, Porter claims that the trial court erred in allowing evidence of a urine test because the State failed to establish a proper chain of custody. We disagree.

■ It is true that in general a "chain of custody" must be demonstrated in situations where the relevant characteristics of the evidence are distinguishable only by scientific tests or analysis. *See Davis v. State*, 831 S.W.2d 426, 443 (Tex.App.—Austin 1992, pet. ref'd). Urine is such evidence. However, the State must prove only the beginning and end of the chain of custody, and any gaps in the interim go to the weight of the evidence, not admissibility. *Id.* Minor theoretical or speculative breaches in the chain, without affirmative evidence of impropriety, do not affect the admissibility of the evidence. *Cuba v. State*, 905 S.W.2d 729, 735 (Tex. App.—Texarkana 1995, no pet.).

The State offered testimony of the emergency room nurse who obtained the sample. He testified that he brought a urinal into the room where appellant was alone, lowered the bed rail so that appellant could stand to give the specimen, then he stepped outside for a moment, leaving appellant alone to provide the sample. When he re-entered the room

one to two minutes later, there was urine in the urinal, and appellant was still the only other person in the room. The nurse placed the urine into a specimen cup, labeled it with appellant's name and patient number, as well as his own initials and the time the specimen was obtained, and placed it in a pneumatic tube which goes directly to the lab. We find the State has produced evidence to establish the beginning of the chain.

The State also produced testimony of the lab technician at the hospital who performed the initial urinalysis. He testified that the tube deposits samples in the front area of the lab, where someone picks them up, matches the doctor's orders with the samples and ensures that the paperwork matches the sample numbers, and hand delivers them to the technician or to a work station in the testing area. He also testified that all samples taken in the emergency room are handled immediately, the implication being that the sample did not sit at any location for very long. The lab technician testified that he always double-checks to ensure the paper matches the sample name. The technician performed the tests and filled out the test documents, which the State also offered into evidence. All specimens that test positive for controlled substances are double-checked by another lab. The State also called a reviewing scientist from the lab that double-checked the results to testify as to that lab's handling and testing procedures. We find that the end of the chain of custody is also established. Gaps in the above chain, if any, go to the weight of the evidence and not to admissibility. *Davis*, 831 S.W.2d at 443.

Appellant argues that because the nurse did not actually see Porter give the urine in the same way that a phlebotomist sees blood actually coming from the body, the State has not established the beginning of the chain. However, we will not require attendant nurses to actually witness the giving of a urine sample. Circumstances can establish the origin of the sample. Secondly, appellant argues that because the theoretical possibility that someone tampered with the sample exists, the sample should be excluded. As mentioned above, any gaps in the chain go to weight of the evidence, not admissibility. *See id.* There was no abuse of discretion in allowing the urine sample test results into evidence. Appellant's point of error four is overruled.

■ In his fifth point of error, Porter claims that the trial court erred in allowing evidence that a spoon and syringe were recovered from his sock by an ambulance attendant during the ride to the hospital. Porter objected under Texas Rule of Evidence 403 alleging the evidence, while relevant, was unduly prejudicial because it would allow the jury to convict for habitual drug use rather than intoxication.

■ The trial court must be given wide latitude to exclude or admit evidence under Rule 403. *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App.1991) (op. on reh'g). So long as the trial court operates within the boundaries of its discretion, an appellate court should not disturb its decision. *Id.* Here, the trial judge could have found that the spoon and syringe were directly relevant to Porter's intoxication on the night in question, and in view of the blood and urine evidence, that it was not in itself unduly prejudicial. Moreover, the judge gave a limiting instruction that admonished the jury to consider such evidence only as it bore on the charges in the indictment. We cannot find that the judge so abused his discretion that it constitutes reversible error. Point of error five is overruled.

### Motion for New Trial

■ In his sixth point of error, defendant claims that the trial court erred in overruling his motion for a new trial due to the testimony of one of the jurors that during the sentencing phase she may have changed her vote to a higher sentence because of statements made by one of the other jurors regarding parole laws. We find no error.

In *Buentello v. State*, cited by appellant, the Texas Court of Criminal Appeals construed the meaning of Texas Rule of Criminal Evidence 606(b)[3] and its effects on its

---

**3.** The Texas Rules of Criminal Evidence and the Texas Rules of Civil Evidence are now unified in the Texas Rules of Evidence. Rule 606(b) of the new Rules contains no substantial changes.

earlier holding in *Sneed v. State*, 670 S.W.2d 262 (Tex.Crim.App.1984), which set forth a five-point test for determining whether a jury's discussion of the parole law constitutes reversible error. *See* 826 S.W.2d 610 (Tex. Crim.App.1992). The court held that upon a motion for a new trial, jurors could testify as to any matter deemed by the trial court to be relevant to the validity of the verdict, and that the *Sneed* test still applies. *See id.* at 614; *see also* Tex.R. Evid. 606(b). Therefore, the only question before us is whether the appellant met his burden of proving the five prongs of the *Sneed* test.

 Under *Sneed*, to win on a motion for a new trial the defendant must produce juror testimony as to each of the following five factors: (1) a misstatement of the law; (2) asserted as a fact; (3) by one professing to know the law; (4) which is relied on by other jurors; and (5) who for that reason changed their vote to a harsher punishment. *Sneed*, 670 S.W.2d at 266. It is not clear to us that Porter has established any of the above factors.

As direct evidence of improper jury deliberations, Porter produced the testimony of only one juror, whose affidavit tracked the *Sneed* standard exactly. On cross examination, the State elicited testimony that threw some doubt as to whether there was any misstatement of the law by any juror and asserted as fact, and whether the juror herself had actually relied upon any such statement. In rebuttal, the State offered the testimony of three jurors, all of whom testified that no one professed to know the parole law, that everybody was uncertain as to the parole law, and any comments that were made in that regard related only to what they considered to be common knowledge of the fact that sometimes people do not serve the full sentence handed down to them. Two jurors denied that parole laws were discussed at all.

As the sole trier of fact in the hearing on the motion for a new trial, the trial judge was well within his discretion to overrule the motion based on the above evidence. He might easily have found that the defense failed to establish any of the *Sneed* factors. There was no error in overruling the motion

for a new trial, and we overrule Porter's sixth point of error.

### CONCLUSION

Having found sufficient evidence to support the jury's verdict, and having found no abuse of discretion or error with respect to the introduction of evidence, we overrule points of error one through five. We have also found no abuse of discretion in denying the motion for a new trial. The judgment of the trial court is affirmed.