# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00056-CR

**Jeffery N. Rucks, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. CR2012-297, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Jeffery N. Rucks was charged with two counts of making or possessing counterfeit insurance documents, *see* Tex. Transp. Code § 548.603(b)(1), with one count of possessing a machine or device used to make counterfeit insurance documents, *id.* § 548.603(b)(2), (d), and three counts of forgery of a commercial instrument, *see* Tex. Penal Code § 32.21(a), (b), (d). After a trial was held, the jury found him guilty of all six counts. During the punishment hearing, Rucks pleaded true to thirteen enhancement allegations. At the end of the hearing, the district court imposed life sentences for the first three counts and 20-year sentences for the other three counts. *See id.* § 12.42 (elevating punishment ranges for repeat felony offenders); *see also id.* § 12.32-.33 (providing punishment ranges for first-degree and second-degree felonies). Rucks appeals the district court's judgments of conviction, and we will affirm his convictions. However, we do remand the case to allow the district court to determine the amount of pretrial jail time credit that Rucks is entitled to.

DISCUSSION

On appeal, Rucks presents six issues challenging his convictions. In his first issue, he argues that the district court's six judgments "should be reformed to reflect the pretrial jail time credit awarded by the trial court." In his second issue, he contends that the "offense in the second count is a lesser included offense of the offense alleged in the first count" and, therefore, that his conviction under the second count constitutes double jeopardy. Similarly, in his third issue, Rucks urges that the sixth count in his indictment is the same as the fifth count and, accordingly, insists that his conviction under both counts is double jeopardy. In his fourth issue, he argues that the evidence is legally insufficient to support his conviction in the third count. In his fifth issue, he asserts that the district court erred by denying his motion to suppress. Finally, in his sixth issue, he urges that the district court erred by admitting evidence "for which the State could not establish the beginning of the chain of custody." Because it provides a convenient way to highlight the evidence relevant to this case, we address Rucks's fourth issue first. Then, we address his second and third issues together followed by his fifth and sixth issues. Finally, we address Rucks's first issue on appeal.

**Sufficiency of the Evidence**

In his fourth issue on appeal, Rucks argues that the evidence is legally insufficient to support his conviction under the third count of his indictment. That count presented a claim under subsection 548.603(b)(2) of the Transportation Code, which prohibits the possession of "any part of a stamp, dye, plate, negative, machine, or other device that is used or designated for use in making a counterfeit" vehicle inspection certificate "or insurance document." Tex. Transp. Code § 548.603(b)(2). Further, the Code elevates the offense level if "the person acts with intent to

defraud or harm another person." *Id.* § 548.603(d). Regarding the particular charges, the indictment alleged that Rucks "did then and there, with intent to defraud another person, possess any part of a machine or other device, to-wit: a Black and Decker power amp and a Canon MP480 printer that were used or designated for use in the making of a counterfeit insurance document."

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

During the trial, Officer Daniel Carmona testified that he initiated a traffic stop of Rucks after noticing that Rucks was not wearing a seatbelt. Further, he stated that after Rucks stopped his car, Rucks "jumped out of the car" and approached the police car. Moreover, Officer Carmona related that when he asked Rucks for his license and proof of insurance, Rucks acted very nervous when handing over the documents. Regarding Rucks's proof of insurance, Officer Carmona stated that the card that Rucks initially gave him had expired but that Rucks later handed him another insurance card that purported to be effective. In addition, Officer Carmona related that after he was

3

advised that there was an active arrest warrant for Rucks, he placed Rucks under arrest, and Officer Carmona also testified that Rucks asked if his car could just be released to his passenger. Next, Officer Carmona recalled that another officer arrived on the scene, Officer Michael Rapier, and that Officer Rapier collected items that were scattered throughout the car.

In his testimony, Officer Carmona explained that a couple of receipts fell out of the car when Officer Rapier opened the door and that one of the receipts matched an unopened set of cookware that was in the vehicle. Further, he related that he noticed "that there was a printer [in the backseat] that was hooked up to a power converter that was" plugged into the car's cigarette lighter, that "the roll of paper" in the printer was receipt paper and "matched the size of the receipt that" was found, and that there was another roll of paper. In addition, Officer Carmona stated that the printer was a Canon MP480 printer and that it appeared to him to have been altered to make it easier to make copies, and he specified that a Black & Decker power amp was connected to the printer. Further, he stated that there were various types of paperwork in the car, including "a bunch of receipts." Finally, he testified that it appeared that Rucks was using the printer to alter receipts to defraud Wal-Mart.

Once Officer Carmona finished testifying, Officer Rapier described his recollection of the events in question. In his testimony, he corroborated Officer Carmona's testimony regarding the cookware and the "Canon copier printer." Regarding the printer, Officer Rapier admitted that he never tested the printer to see if it worked, but he testified that he found the printer in the backseat and that the printer was plugged into the car's cigarette lighter by use of a power cord and the Black & Decker power amp inverter. In addition, Officer Rapier recalled that there was a box for

4

the printer and a binder "filled with paperwork or receipts," including Wal-Mart receipts. Moreover, he stated that one of the Wal-Mart receipts "was glued or pasted together." Next, he related that he found "another receipt that was copied or made from the glued receipt . . . it looked like a legitimate receipt . . . with the same numbers and everything like that." The receipt that was cut and pasted together was admitted as exhibit 8, and the receipt that was allegedly a completed copy was admitted as exhibit 9. Finally, Officer Rapier also explained that he gathered the various types of documents that were located in the car, placed them in the printer box, closed the box, and transported the box, the printer, and the power cords to the evidence locker of the Schertz Police Department.

After Officer Rapier testified, Detective Kelly Kallies was called to the stand and testified that she was the evidence technician for the Schertz Police Department and catalogued the evidence that Officer Rapier brought to the evidence locker, including the printer and the contents of the printer box. In her testimony, she detailed that she examined the Wal-Mart receipts to determine which receipts were altered and documented the condition of the receipts, that some of the receipts had been cut and pasted together, that other receipts were copies of the altered ones, that exhibit 8 was a receipt that was in the process of being modified, and that exhibit 9 was a duplicate of the finished alteration. Moreover, she related that there were several "pieces of paper with Wal-Mart receipts copied on them"[1] and that the evidence was consistent with an intent to defraud or harm Wal-Mart.

_____

[1] During the trial, Officer Jason Erben testified that after Rucks was arrested, a Wal-Mart receipt for a mixer was found in his pocket. Further, Officer Erben explained that he transported the receipt from the detention center to the Schertz Police Department so that it could be entered into evidence. That receipt formed the basis for the fourth count in Rucks's indictment, but Rucks does not appeal his conviction for that count.

In addition to testifying about the receipts, Detective Kallies related that she found in the printer box insurance cards with Rucks listed as the policyholder. Earlier in the trial, two individuals working for an insurance company, Mark Tickerhoof and Carol Havey, testified that Rucks had purchased an automobile-insurance policy with an effective period from June 17, 2009, to July 17, 2009.[2] In her testimony, Detective Kallies stated that the insurance cards that she found in the box had the same policy number and vehicle description as the monthly policy that Rucks purchased previously, but she testified that the effective and expiration dates on the cards had been changed. Regarding the first card, she testified that it had "a small piece of paper taped or glued—attached to the—over the original effective date and it says '7-17-2009.' Underneath it it says 6-17-2009." In addition, she explained that the expiration date had been changed from July 17, 2009, to August 17, 2009, and described the document as in the process of being altered. Regarding the second card, Detective Kallies mentioned that the effective date and the expiration date had been successfully changed to "7-17-2009" and "8-17-2009," respectively. In other words, Detective Kallies stated that the second card was a copy of the first card. Moreover, she emphasized that both cards were counterfeit. Both cards were admitted into evidence as exhibits.

Although Detective Kallies conceded that she had not tested to see whether the printer or the power inverter worked, she testified that the printer was a machine used in the making of counterfeit insurance documents and receipts.

---

[2] In his testimony, Tickerhoof explained that Rucks did not have permission to alter the insurance document.

In light of the evidence summarized above as well as the reasonable inferences that the jury could have made from that evidence and given that the standard of review for legal-sufficiency challenges obligates appellate courts to defer to the jury's resolution of conflicts in the testimony and to review the evidence in the light most favorable to the verdict, *see Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 16-17, we cannot conclude that the evidence was legally insufficient to support Rucks's conviction under count three of the indictment, *see Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985) (providing that intent to defraud may be established through circumstantial evidence); *Hill v. State*, 608 S.W.2d 932, 934 (Tex. Crim. App. 1980) (providing that "[t]he intent to defraud can be proven circumstantially upon proof of the accused's knowledge that the instrument is a forgery").

Accordingly, we overrule Rucks's fourth issue on appeal.

**Double Jeopardy**

In his second issue, Rucks argues that his "[c]onviction and punishment under the second count of the indictment violates the prohibition on multiple punishments for a single offense because the offense in the second count is a lesser included offense of the offense alleged in the first count of the indictment." In his third issue on appeal, Rucks raises similar double-jeopardy concerns and alleges that the sixth count in the indictment is the same as the fifth count.

"The Double Jeopardy Clause of the Fifth Amendment . . . protects an accused against a second prosecution for the same offense for which he has been previously acquitted or previously convicted" and "also protects an accused from being punished more than once for the same offense." *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008); *see Bigon v. State*,

252 S.W.3d 360, 369 (Tex. Crim. App. 2008) (explaining that Fifth Amendment protects "against multiple punishments for the same offense"). "In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense." *Littrell*, 271 S.W.3d at 275-76. An offense is a lesser-included one if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged" or if "it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." Tex. Code Crim. Proc. art. 37.09(1), (3).

Regarding his second issue, in the first and second counts of the indictment, Rucks was charged under subsection 548.603(b)(1) of the Transportation Code, which prohibits making or possessing, "with the intent to sell, circulate, or pass, a counterfeit" vehicle insurance document. Tex. Transp. Code § 548.603(b)(1). The first count of the indictment alleged that Rucks "did then and there, with intent to defraud another, make with intent to circulate or pass a counterfeit insurance document, to-wit: one Texas Insurance Identification Card with forged policy effective date and/or expiration date" or that Rucks "did then and there, with intent to defraud another, possess with intent to circulate or pass a counterfeit insurance document, to-wit: one Texas Insurance Identification Card with forged policy effective date and/or expiration date." The second count alleged that Rucks "did then and there, make with intent to circulate or pass a counterfeit insurance document, to-wit: one Texas Insurance Identification Card with forged policy expiration date" or that Rucks "did then and there, possess with intent to circulate or pass a counterfeit insurance document, to-wit: one Texas Insurance Identification Card with forged policy expiration date."

8

In light of the fact that both counts were charged under subsection 548.603(b)(1) and given that the language of the second count is nearly identical to the first count except that it does not contain the phrases "with intent to defraud another" and "effective date," Rucks urges that the second count is a lesser included offense of the first one. *See Littrell*, 271 S.W.3d at 276 (explaining that determinations regarding lesser-included offenses are made by comparing elements of greater offense as alleged in indictment with elements of statute that defines alleged lesser offense). Accordingly, Rucks contends that the counts "are the same offense for jeopardy purposes and both may not stand without doing violence to the Double Jeopardy Clause" and asks this Court to affirm the conviction of the more serious offense and vacate the other one. *See Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). Although Rucks notes that he was given the same sentence under both counts, *id.* at 338 (explaining that generally most serious offense is one "for which the greatest sentence was assessed"), he asserts that the first count is the more serious one because it contains the fraud element and was charged as a second-degree felony while the second count was charged as a third-degree felony. *See* Tex. Transp. Code § 548.603(d) (explaining that offense under subsection 548.603(b) is third-degree felony and elevating offense level to second-degree felony if "person acts with the intent to defraud").

Regarding his third issue, both the fifth and the sixth counts alleged that Rucks forged Wal-Mart receipts. The Penal Code defines "[f]orge" as "to alter, make, complete, execute, or authenticate any writing so that it purports . . . to be the act of another who did not authorize the act"; "to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged"; or "to possess a writing that is forged . . . with intent to utter it." Tex. Penal Code

§ 32.21(a)(1). Moreover, the Penal Code states that a person is guilty of forgery if "he forges a writing with intent to defraud or harm another" and elevates the offense level "if the writing is or purports to be a . . . commercial instrument." *Id.* § 32.21(b), (d). The fifth count of the indictment alleged that Rucks "did then and there, with intent to defraud and harm another, alter or make a writing so it purported to be the act of another to-wit: Wal-Mart, who did not authorize the act, and said writing was a commercial instrument; to-wit: receipt of the tenor following." Following this allegation, the indictment contained a copy of a receipt purporting to be a receipt for the purchase of cookware from Wal-Mart. The sixth count made an identical allegation and contained a copy of a Wal-Mart receipt also for the purchase of cookware. The amounts reflected in the receipts as well as the dates listed on them are the same.

In light of the identical wording in the two counts and the similarity of the two receipts, Rucks contends that "the offense alleged in the sixth count is the same offense alleged in the fifth count of the indictment." Accordingly, Rucks argues that "both may not be allowed to stand without doing violence to the Double Jeopardy Clause." Moreover, because the offense level and the punishments imposed for both offenses are the same, Rucks suggests that neither offense is more serious than the other and that this Court should just vacate the sixth count.

In resolving these issues on appeal, we note, as a preliminary matter, that Rucks did not present these double-jeopardy claims to the district court. *See* Tex. Code Crim. Proc. art. 1.14(b) (specifying that defendant waives right to appeal error in indictment if he does not object to error before trial commences); *see Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000) (explaining that defendant has burden to preserve double-jeopardy objection at or before time charge

10

is given to jury). Typically, the failure to present an issue to the district court prevents the issue from being considered on appeal. *See* Tex. R. App. P. 33.1(a) (requiring that complaint be made to trial court in order to preserve issue for appeal). However, the court of criminal appeals has determined that "because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal . . . when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez*, 8 S.W.3d at 643. "A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim." *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013). Having reviewed the record in this case, we cannot conclude that the first requirement is met for either issue. *See Barriga-Hermosillo v. State*, No. PD-0879-13, 2014 Tex. Crim. App. Unpub. LEXIS 467, at *12 (Tex. Crim. App. May 7, 2014) (not designated for publication) (explaining that both requirements must be satisfied before reviewing court may address double-jeopardy claim that was not presented to trial court).

During the trial, evidence was presented demonstrating that two different documents purporting to be insurance cards were found in the car that Rucks was driving, and those documents served as the basis for the first two counts of the indictment. As described in the previous issue, the State alleged that one of the cards was in the process of being altered by pasting alterations to its face and that the second card was a copy of the first one but that it had been successfully changed. Moreover, both documents were admitted as exhibits. Similarly, during the trial, the State presented

11

evidence of multiple counterfeit receipts purporting to be from Wal-Mart, and the State admitted as exhibits two of the altered receipts, which served as the basis for the fifth and sixth counts. As with the insurance cards, the State argued that one receipt was a genuine Wal-Mart receipt that was in the process of being changed and that the other one was a completed copy of the first one.

Accordingly, as urged by the State, the jury could have found Rucks guilty of the four counts based on four distinct allegedly altered documents. *See id.* at *11-12 (providing that "[i]n appropriate circumstances, a defendant may properly be charged with, and convicted of, two offenses under the same statute that are alleged in the same indictment with the same date"); *Gonzalez*, 8 S.W.3d at 645 (explaining that when indictment contained multiple paragraphs and when jury's general verdict could have been based on resolution of those paragraphs in manner that would not have constituted double jeopardy, no double-jeopardy violation is apparent on face of record).

For the reasons previously given, we overrule Rucks's second and third issues on appeal.

**Motion to Suppress**

In his fifth issue on appeal, Rucks contends that the district court erred by denying his motion to suppress the insurance cards as well as testimony pertaining to those cards. When seeking to suppress the evidence in the suppression hearing, Rucks did not challenge the seizure of the evidence by the police or the inventory of his car; instead, he argued that Detective Kallies improperly searched without a warrant the printer box months after it was placed in the evidence locker. Accordingly, Rucks argued during the hearing that the district court should suppress the

insurance cards that Detective Kallies found in the box along with any testimony pertaining to those cards.

In its conclusions of law, the district court determined that the printer box "was seized as evidence in a potential criminal matter rather than as mere inventory in a search incident to an arrest." Further, the court concluded that Rucks "failed to demonstrate that he had a continuing, legitimate[, and] reasonable expectation of privacy in the seized evidentiary material requiring the issuance of a search warrant before further investigation of the evidence contained within the box."

When presenting this argument on appeal, Rucks argues that although the right is a diminished one, the court of criminal appeals has nonetheless recognized that "arrestees do retain some level of privacy interest in the personal effects or belongings taken from them incident to their arrest." *Oles v. State*, 993 S.W.2d 103, 108 (Tex. Crim. App. 1999). Moreover, Rucks contends that although the circumstances might have justified the issuance of a search warrant to examine the contents of the box, *see State v. Jordan*, 342 S.W.3d 565, 568-69 (Tex. Crim. App. 2011) (describing circumstances in which warrant may issue), no search warrant was applied for or issued. Accordingly, Rucks insists that the search was presumptively unreasonable. *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (explaining that there are exceptions to warrant requirement). For these reasons, Rucks urges this Court to conclude that the district court should have suppressed the evidence relating to the insurance cards, which formed the basis for the first three counts of Rucks's indictment.

A trial court's ruling on a motion to suppress is reviewed under an abuse-of-discretion standard. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *see also Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (specifying that trial court abuses its discretion when

its decision lies outside zone of reasonable disagreement); *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005) (noting that trial court abuses its discretion when its ruling is unreasonable or arbitrary). In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). When reviewing a ruling on a motion to suppress, appellate courts apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010). Under that standard, appellate courts "afford almost total deference to a trial judge's findings of fact in a suppression hearing as long as those factual findings are supported by the record," *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014); *see Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but review de novo the trial court's application of the law to those facts, *Wilson*, 311 S.W.3d at 458. Similarly, appellate courts give almost total deference to "rulings on mixed questions of law and fact when the resolution" depends on an evaluation of credibility and demeanor but "review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor." *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). Moreover, purely legal questions are reviewed de novo. *Id.* On appeal, the trial court's ruling will be upheld if it is correct under any applicable theory of law. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

As a preliminary matter, we note that this case does not present the more typical fact pattern in which courts have had to determine whether a warrantless search runs afoul of Fourth Amendment restrictions. *See, e.g.*, *Granville*, 423 S.W.3d at 402, 412-17 (considering whether search without warrant of defendant's phone when he had been arrested for unrelated charge violated

14

his Fourth Amendment rights); *Oles*, 993 S.W.2d at 105, 106-11 (addressing whether testing of defendant's clothing after his arrest on an unrelated matter and when "[t]here was no evidence on or within his clothing that was immediately apparent to the naked eye" violated Fourth Amendment). Instead, in this case, after the police pulled Rucks over for a traffic violation, they noticed in the car multiple receipts from Wal-Mart that appeared to have been altered as well as a printer that they believed was being used to make the counterfeit documents. In an effort to collect the evidence, the police gathered the printer and its accessories, placed the paperwork that was located in the car into the printer's box, and transferred the box to the evidence locker. For that reason, the district court concluded that the printer box was seized as evidence, and Rucks does not contest the propriety of these actions by the police. Accordingly, the fact that the police later found additional evidence of other counterfeiting inside the box would not seem to implicate any Fourth Amendment concerns, and we have been unable to find any authority standing for the proposition that the police were obligated to obtain a search warrant when it chronicled the evidence located inside the box.

Even assuming that Fourth Amendment rights are implicated, we would be unable to conclude that the district court abused its discretion by denying Rucks's motion to suppress. Although the types of documents and personal effects have changed over time, the "central concern underlying the Fourth Amendment" is still "the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009). To successfully present a claim that a search or seizure was unreasonable, an individual must show that "he has a subjective expectation of privacy in the place or object searched, and" that "society is prepared to recognize that expectation as 'reasonable' or 'legitimate.'" *Granville*,

15

423 S.W.3d at 405 (quoting *Minnesota v. Olson*, 495 U.S. 91, 95-97 (1990); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004)). "A 'legitimate' expectation of privacy acknowledges the lawfulness of the person's 'subjective' expectation of privacy." *Id.* at 407.

As discussed earlier, Rucks does not challenge the taking of the box or its contents when he was arrested, and we do not believe that he has demonstrated a subjective expectation of privacy to the contents of the box or shown that society would recognize as reasonable an expectation of privacy regarding those items when they were taken as evidence of criminal activity from the car and placed in an evidence storage locker. *See Oles*, 993 S.W.2d at 105, 109, 110-11 (concluding that forensic testing performed on defendant's clothing days after his arrest was reasonable, that defendant had no subjective expectation of privacy in clothes in police custody, and that society would not deem any expectation of privacy reasonable and noting that law-enforcement-storage facility is not commonly associated with notions of privacy and that "[n]o situation imaginable is as alien to the notion of privacy than an arrestee sitting in a jail cell, completely separated from his effects that are lawfully controlled and inventoried by the very police that are investigating him"). Moreover, unlike the contents of a personal cell phone, which the court of criminal appeals has recently determined carries a reasonable expectation of privacy, *see Granville*, 423 S.W.3d at 408-17 (explaining that cell phones now contain more personal information than most personal property and that they are "not like a pair of pants or a shoe" and concluding that arrestee has reasonable expectation of privacy in contents of cell phone that is being temporarily stored in jail property room), the significance of the documents at issue here was apparent from looking at the face of the documents, *cf. United States v. Phillips*, 607 F.2d 808, 809-10 (8th Cir.

16

1979) (upholding admission of robbery checklist found in defendant's wallet after defendant was arrested and his belongings were placed in police custody).

For these reasons, we cannot conclude that the district court abused its discretion by denying Rucks's motion to suppress, and therefore, we overrule Rucks's fifth issue on appeal.

**Chain of Custody**

In his sixth issue on appeal, Rucks contends that the district court erred by admitting into evidence the contents of the printer box because "the State could not establish the beginning of the chain of custody." When making this argument, Rucks acknowledges that gaps in the chain of custody generally go to the weight to be given to the evidence rather than its admissibility, but he insists that evidence establishing the beginning and the end of the chain of custody is always required. *See Porter v. State*, 969 S.W.2d 60, 66 (Tex. App.—Austin 1998, pet. ref'd) (explaining that when proof of chain of custody is required, "the State must prove only the beginning and the end of the chain of custody, and any gaps in the interim go to the weight of the evidence, not admissibility"). As support for his assertion that the origin of the chain of custody was not established, Rucks points to testimony by Officer Rapier in which he admitted that when he was gathering the documents in the car, he failed to comply with evidence-collecting policies because he did not mark the documents or seal them in an evidence bag. In addition, Rucks highlights that Officer Rapier's evidence-retention form did not individually list the items gathered and that Detective Kallies testified that the insurance cards were not identified in Officer Rapier's evidence-retention form. Importantly, Rucks notes that Officer Rapier testified that he did not see any insurance cards when he was collecting documents from the car.

17

Testimony establishing a chain of custody is used to link collected evidence with testimony given during the trial concerning the evidence and often addressing the results of scientific testing, "such as DNA testing," *see Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd), and urine testing, *Porter*, 969 S.W.2d at 66, "where the relevant characteristics of the evidence are distinguishable only by scientific tests or analysis." *Id.* On appeal, we review a trial court's "decision on the admissibility of evidence . . . under an abuse of discretion standard." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

Although Rucks correctly points out that Officer Rapier admitted that he did not notice the insurance documents when he was collecting evidence from the car, it is similarly undisputed that Officer Rapier gathered paper documents from inside the car, including various Wal-Mart receipts that appeared to have been altered, placed them into a printer box that was also located inside the car, closed the box, and transported the box to the evidence locker. In addition, Officer Rapier identified the two receipts admitted as exhibits as two of the receipts that he collected from the car and placed in the box.

Moreover, Detective Kallies provided extensive testimony describing how the insurance cards and Wal-Mart receipts were located in the box containing evidence gathered from the car that Rucks was driving and how the box had been stored in the evidence locker from the day that Officer Rapier collected the evidence. *See* Tex. R. Evid. 901(a), (b) (providing that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims" and that authentication may be done through "[t]estimony that a matter is what it is claimed to be").

18

In particular, she testified that the box was closed when it was brought to the evidence locker, that she took custody of the box shortly after Rucks's arrest, and that she secured the evidence and maintained it after Officer Rapier brought it to the evidence locker. In addition, she testified that the cards listed Rucks as the policyholder and specified that the exhibits offered by the State were the same cards that she found in the box.

Furthermore, Rucks provided no evidence or testimony indicating that the documents had been tampered with since they were recovered from the car or suggesting that they had been improperly placed in the box after the box was stored. *Cf. Dossett*, 216 S.W.3d at 17, 18 (explaining, in chain-of-custody context, that defendant has burden to present evidence of tampering and that "mere passage of time" is not evidence of tampering).

In light of this testimony and given the nature of the evidence at issue, we cannot conclude that the district court abused its discretion by admitting into evidence the contents of the box, including the Wal-Mart receipts and the two insurance cards that were discovered in the printer box.[3] *See id.* at 17 (explaining that trial court "does not abuse its discretion by admitting evidence based on a belief that a reasonable juror could find that the evidence has been authenticated or identified"); *see also Sereal v. State*, No. 01-09-00192-CR, 2011 Tex. App. LEXIS 2416, at *8 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, pet. ref'd) (mem. op., not designated for publication)

---

[3] In reaching this result, we note that the district court did not allow into evidence all of the items that were found in the box. For example, the district court ruled that rolls of blank printer paper could not be admitted because unlike the insurance cards or receipts, they were not unique or distinguishable.

19

(explaining that chain of custody may be established "through witness testimony"). Accordingly, we overrule Rucks's sixth issue on appeal.

**Pretrial Jail Time Credits**

In his first issue, Rucks contends that his judgments should be reformed "to reflect the pretrial jail credit awarded by the" district court. *See* Tex. R. App. P. 43.2(b) (allowing appellate court to modify trial court's judgment); *see also* Tex. Code Crim. Proc. art. 42.03, § 2(a)(1) (requiring trial court to "give the defendant credit on the defendant's sentence for the time that the defendant has spent" in jail for case).

There are two periods of time in question in this appeal. Regarding the first period of time, the district court's judgments reflect that Rucks was given credit for jail time from August 26, 2009, to November 30, 2009. Regarding the second period, the district court's judgments specify that Rucks was given credit for time served from July 29, 2011, to January 15, 2013.

During the punishment hearing, Rucks filed two exhibits pertaining to his credit requests. The first exhibit showed that Rucks had been in jail starting on August 26, 2009, and released on November 23, 2009. Similarly, Rucks asked the district court during the hearing for credit "from 8-26 to 11-23 of 2009," and the district court granted his request. On appeal, Rucks's brief shows that the judgments actually awarded him seven more days of credit than he requested, but he does not otherwise specify in his analysis or in his prayer whether this addition was improper. The State does not address this discrepancy in its brief and limits its response to the second period of jail-time credit.

In this issue, Rucks focuses his challenge on the second period of jail-time credit. Specifically, he contends that the credit given to him in the judgments from July 29, 2011, to January 15, 2013, does not comport with the jail-time credit actually awarded during the punishment hearing, which Rucks urges was from October 10, 2010, to January 15, 2013. During the punishment hearing, Rucks specifically requested credit from the date of the indictment, which was October 13, 2010, through the date of the sentencing hearing, which was January 15, 2013. The State did not object to the request made by Rucks.

According to Rucks, he was already incarcerated at the time that the indictment was issued, and a hold was placed on him during this incarceration. The two exhibits that Rucks filed when requesting jail-time credit show that Rucks was placed on a hold from the Texas Department of Criminal Justice starting on June 10, 2011, and ending on September 8, 2011, and that Rucks was in prison on another matter from September 30, 2010, to July 29, 2011.

On appeal, the State agrees that the judgment should be reformed to award Rucks additional credit for time served, but the State insists that Rucks is only entitled to additional credit from the time that he was placed on a hold by the Department, which according to Rucks's exhibit occurred on June 10, 2011. *See Ferrin v. State*, Nos. 05-98-02010–02011-CR, 1999 Tex. App. LEXIS 9611, at *2 (Tex. App.—Dallas Dec. 30, 1999, no pet.) (not designated for publication) (providing that if person is confined in another jurisdiction, he is entitled to credit only when "a detainer or hold is lodged against him by the first jurisdiction" (citing *Ex parte Bynum*, 772 S.W.2d 113, 114 (Tex. Crim. App. 1989))). Further, the State argues that there is no evidence that "any hold was placed prior to this date." Accordingly, the State insists that Rucks is not entitled to jail time

21

credit from the date that the indictment was handed down (October 13, 2010) and should only be awarded the additional credit from June 10, 2011. *See Jones v. State*, No. 11-97-00189-CR, 1999 WL 33743960, at *2 (Tex. App.—Eastland Mar. 11, 1999, no pet.) (not designated for publication) (explaining that placement under indictment is not same as "detainer or hold").

As mentioned above, Rucks and the State both agree that he was entitled to additional jail-time credit under the second credit given by the district court, but they disagree regarding the amount of time that should be awarded. Further, there appears to be a discrepancy between the time requested by Rucks regarding the first credit and the dates reflected in the judgments as well as a discrepancy regarding the start date that he claims he was entitled to in his brief for the second credit and the start date that he actually requested from the district court. For these reasons and given our limited role as an appellate court, we sustain Rucks's first issue on appeal but remand this issue to the district court to convene a hearing regarding the amount of jail-time credit that Rucks should be awarded. *Cf. Carter v. State*, No. 03-09-00211-CR, 2009 Tex. App. LEXIS 9265, at *3 (Tex. App.—Austin Dec. 3, 2009, no pet.) (mem. op., not designated for publication) (concluding that remand to consider issue of jail-time credit was not appropriate where amount awarded was not shown to be incorrect).

## CONCLUSION

Having overruled Rucks's second through sixth issues on appeal, we affirm the district court's judgments of conviction. However, having sustained Rucks's first issue on appeal, we remand that issue for proceedings consistent with this opinion.

22

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part; Reversed and Remanded in Part

Filed:   November 25, 2014

Do Not Publish