

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00385-CR

CHRISTOPHER CHAD PARKER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 3042; Honorable Gordon H. Green, Presiding

January 8, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Christopher Chad Parker, appeals from his convictions by a jury of the offenses of manslaughter,[1] aggravated assault,[2] and possession of a controlled substance,[3] and the resulting respective court-imposed concurrent sentences of imprisonment for periods of fifteen years, eight years, and two years. Through three

---

[1] TEX. PENAL CODE ANN. § 19.04 (West 2019).

[2] TEX. PENAL CODE ANN. § 22.02 (West 2019).

[3] TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2017).

issues, Appellant challenges his convictions by arguing as follows: (1) the trial court erred in admitting blood evidence and the accompanying analysis report because the evidence was obtained as a result of an illegal search; (2) the trial court erred in allowing a witness to testify to the physical effects of methamphetamine on the human body; and (3) the evidence is insufficient to support his conviction for manslaughter. Based on the reasons that follow, we affirm the convictions of the trial court.

## BACKGROUND

In mid-June 2016, Appellant was involved in an early morning fatal motor vehicle accident. Appellant was driving a pickup and towing a defective homemade trailer when he struck another vehicle, killing the driver of that vehicle and severely injuring a passenger in his vehicle. Appellant was also injured and while paramedics were treating him at the scene of the accident, they found a syringe and vial inside his socks. Those items were later given to the primary investigator, DPS Trooper Bobby Garcia. The vial recovered from Appellant's sock tested positive for methamphetamine. Later, police recovered another syringe from a locked black box found at the scene.

Appellant was taken to a Lubbock hospital for treatment. While there, hospital employees drew Appellant's blood for medical purposes and maintained it in the hospital's blood bank. The blood, contained in a vial marked as belonging to "Christopher C. Parker," in "Laboratory Case Number LUB-1606-02782," was retrieved by the police via a grand jury subpoena and transported to the DPS laboratory in Lubbock, to be analyzed for the presence of alcohol. The Lubbock laboratory later sent the vial to the DPS laboratory in Austin, to be tested for the presence of methamphetamine. After the vial was transferred to the Austin laboratory, a search warrant was obtained authorizing a

2

"search" of the vial. A report from the Austin laboratory indicated the presence of methamphetamine in the blood contained in the vial. Appellant was arrested and indicted for (1) manslaughter in connection with the death of the driver of the other motor vehicle, (2) aggravated assault for the injuries sustained by the passenger, and (3) possession of a controlled substance, to-wit: methamphetamine.

**ANALYSIS**

**ISSUE ONE—ADMISSION OF BLOOD EVIDENCE AND ANALYSIS REPORT**

Via a pretrial motion to suppress, Appellant attempted to have evidence of his blood test results and the accompanying report indicating the presence of methamphetamine in his blood suppressed. The State notes that, when this evidence was presented, Appellant did not object to or offer any argument that the blood or the results were illegally obtained. Thus, the State argues, Appellant has forfeited appellate review of this issue.

We review a ruling on a motion to suppress using a bifurcated standard of review. *Sims v. State,* 569 S.W.3d 634, 640 (Tex. Crim. App. 2019) (citing *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex. Crim. App. 1997)). A trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor are afforded almost total deference if they are reasonably supported by the record. *Sims*, 569 S.W.3d at 640 (citation omitted). Furthermore, we review a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor under a *de novo* standard of review. *Id.* (citation omitted). When a trial court denies a motion to suppress, we will uphold that

3

ruling under any theory of the law applicable to the case. *Id.* (citing *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005)).

Preservation of claims of error in the admission of evidence for appellate review requires that the complaining party must have made a timely and specific objection during trial, and the failure to object waives any error in the admission of that evidence. *See* TEX. R. APP. P. 33.1(a); *Fancher v. State*, 659 S.W.2d 836, 839 (Tex. Crim. App. 1983). "[T]he purpose of requiring [an] objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Martinez v. State,* 22 S.W.3d 504, 507 (Tex. Crim. App. 2000).

Here, by way of his pretrial motion to suppress, Appellant sought to suppress all evidence regarding this case, including testimony of the observations made by police and emergency personnel; testimony regarding Appellant's statements or actions; testimony regarding the search of Appellant's vehicle; all video recordings taken during the seizure, detention, questioning, and search of Appellant's person or property; any drugs, controlled substances, contraband, or paraphernalia seized at the crash scene; and "[a]ny blood or other bodily fluids of the [Appellant], as well as any scientific testing of the same, and any testimony regarding those items."

The court held a pretrial hearing on Appellant's motion, during which five witnesses testified. The only testimony regarding the blood samples taken from Appellant came from Trooper Garcia, employed with the Texas Department of Public Safety. Trooper Garcia testified he retrieved a sample of blood with Appellant's name and laboratory case number on it from the hospital pursuant to a grand jury subpoena. There was no

4

questioning of any witness concerning the subsequent delivery of Appellant's blood sample to the DPS laboratory in Austin, or as to the actual results of any testing by that laboratory, or the report generated, reflecting the results of that test.

At trial, Appellant objected to the admission of the evidence concerning the results of the test performed on Appellant's blood. His objection focused mainly on the chain of custody of the sample and on what he termed as his "previous" Fourth Amendment objection. The only previous objection concerning the Fourth Amendment or the concept of "search and seizure" was in reference to Trooper Garcia's retrieval of the blood sample from the hospital through the use of a grand jury subpoena, as opposed to a search warrant.

Because Appellant raised no objection at trial to the testimony regarding the testing of Appellant's blood sample for the presence of alcohol by the Lubbock laboratory, a test that was conducted prior to the delivery of the vial to the Austin laboratory, he has waived any error with respect to the State's acquisition of the vial for testing purposes.[4] Likewise, because there was no specific objection concerning the delivery of the vial from the Lubbock laboratory to the Austin laboratory, he has waived any error with respect to the State's acquisition of the vial for the purpose of testing Appellant's blood for the presence of methamphetamine. Finally, because no objection was made at trial concerning the actual testing of Appellant's blood for the presence of methamphetamine, he has waived

---

[4] There is no Fourth Amendment reasonable expectation of privacy protecting blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident. *See State v. Hardy*, 983 S.W.2d 516, 527 (Tex. Crim. App. 1997). *See also State v. Huse*, 491 S.W.3d 833 (Tex. Crim. App. 2016) (affirming *Hardy's* holding with respect to Fourth Amendment standing, even in light of the subsequently enacted provisions of the Health Insurance Portability and Accountability Act of 1966 (HIPAA)).

any error with respect to the results of that testing. Therefore, Appellant has failed to preserve error, if any, with respect to the delivery of the vial to the Austin laboratory or the results obtained from the testing of its contents. Accordingly, we find Appellant failed to preserve his issue concerning the admission of blood evidence and the accompanying report. Consequently, we resolve issue one against Appellant.

**ISSUE TWO—ADMISSION OF TESTIMONY CONCERNING EFFECT OF METHAMPHETAMINE**

In Appellant's second issue, he argues the trial court erred in admitting the testimony of Christina Renson, a DPS toxicologist, regarding the physical effects of methamphetamine on the human body. Appellant contends Renson was not properly qualified as an expert to testify on that subject and that her testimony was harmful to Appellant. The State responds that Renson was qualified to testify about the general effect of methamphetamine on a human body. The State further argues that there was no abuse of discretion in admitting her testimony because it was both reliable and relevant and was unimpeached by Appellant. Furthermore, the State asserts that, even if the evidence was erroneously admitted, any error was harmless.

Absent an abuse of discretion, a trial court's decision to admit scientific testimony should not be overturned. *Ashby v. State,* 527 S.W.3d 356, 361-62 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *DeLarue v. State*, 102 S.W.3d 388, 395 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd)). Accordingly, an appellate court should uphold the trial court's decision unless that decision lies outside the zone of reasonable disagreement. *Ashby*, 527 S.W.3d 356 at 361-62 (citing *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009)).

6

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. *Ashby*, 527 S.W.3d at 362 (citing TEX. R. EVID. 702; *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 590-93, 113 S. Ct. 2786, 2795-96, 125 L. Ed. 2d 469 (1993); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001)). Before admitting expert testimony, a trial court must determine that (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact finder in deciding the case. *Ashby*, 527 S.W.3d 356 at 362 (citing *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006)). Therefore, the trial court must determine that both the expert is qualified to testify, and the tendered testimony is reliable and relevant. *Ashby*, 527 S.W.3d 356 at 362 (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)).

Renson testified she is a forensic scientist in the toxicology section at the Texas Department of Public Safety crime laboratory. She had been employed there for eight years. She also stated she was a member of the Southwest Association of Toxicologists. She also described for the jury her education which included a Bachelor of Science in Chemistry and a PhD of Science in Forensics. Renson testified she had previously qualified to testify in Texas courts as an expert. She then testified regarding how her background and training qualified her to testify concerning the physical effects of methamphetamine on the body. She told the jury she had learned of these effects through her department's internal training, literature articles, and through attendance at two

7

conferences and one class, "courses that teach the effects of drugs on human performance." Those courses were described in State's Exhibit 76 as courses entitled, "The Effects of Drugs on Human Performance and Behavior" and "Observations of DREs and Drug Impaired Individuals."

Over Appellant's objection that she was "not properly qualified as an expert to give these opinions," Renson then testified as follows:

> [i]n general terms, methamphetamine and amphetamine have a two-fold effect. So when you are coming up on them you can have stimulant effects, such as restlessness. You can be agitated. You can have body tremors, jitters, nervousness, lack of alertness, increased risk taking and light sensitivity. When you are going down off of amphetamine or methamphetamine, you can have depression and anxiety, appearance of your having drunkenness, slurred speech, blurred vision, quote, unquote, drunk-like behavior.

During cross and re-cross examination, Renson admitted she did not have personal experience observing people under the influence of methamphetamine and that she could not tell the jury how the amount of methamphetamine found in Appellant's blood would have affected him, when it affected him, or how long it affected him in the way she described.

Based on these analytical gaps, Appellant contends Renson was not qualified to testify because the "ultimate opinion sought here was the effects that methamphetamine might have had on Appellant" and nothing in the record indicated "Renson reviewed Appellant's physical composition or the effect methamphetamine might have had on him." Appellant's arguments notwithstanding, Renson testimony was clearly limited to the general effects of methamphetamine and amphetamine on the human body and she

8

noted that the amount found in the sample of Appellant's blood was a "medium" amount that "could" indicate drug abuse. This testimony was proffered for the purpose of educating the jury, not for explaining how methamphetamine personally affected Appellant or what role it might have played in the motor vehicle accident in question.[5] Thus, under these facts, we cannot say the trial court abused its discretion in admitting Renson's testimony.

Furthermore, even if the trial court's admission of Renson's testimony was erroneous, under the facts of this case, any such error would have been harmless. Pursuant to Texas Rule of Appellate Procedure 44.2(b), "non-constitutional error must be disregarded unless it affects the defendant's substantial rights," i.e., the error had a substantial and injurious effect or influence in determining the jury's verdict. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011) (citing TEX. R. APP. P. 44.2(b)). Under this standard, an appellate court will not overturn a criminal conviction for non-constitutional error if "after examining the record as a whole" the court has a "fair assurance that the error did not influence the jury or influenced the jury only slightly." *Barshaw*, 342 S.W.3d at 93.

---

[5] For example, the testimony given here was much more general than that in *Haley v. State*, 396 S.W.3d 756, 764-766 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The expert in *Haley* had many more qualifications and more experience than Renson. Among his other credentials, the expert had published approximately eighty articles in the area of toxicology and had conducted studies in that area. *Id.* at 764. He was also the director of a program that trained individuals in the effects of alcohol and drugs on driving. *Id.* His description of his training, experience, and studies, was far more expansive than that provided by Renson. *Id.* at 764-66. Renson had very little experience comparatively. But, the expert in *Haley* was called upon to testify to the impairment of driving ability when under the influence of methamphetamine and whether the level of methamphetamine found in the defendant's blood was a contributing factor to the crash because it would have affected his coordination, attention, and driving ability. *Id.* at 766. Here, however, Renson testified about common physical effects resulting from a "medium" amount of methamphetamine found in the blood. She did not testify about how the methamphetamine affected Appellant's ability to drive or what effect it might have had on the crash.

In an interview of Appellant by an investigator from the Texas Rangers, Appellant admitted that (1) he used methamphetamine forty-eight to twenty-four hours prior to the crash, (2) he had methamphetamine in his sock, (3) his blood test would be positive for methamphetamine,[6] (4) he was addicted to methamphetamine,[7] and (5) while he did not think he was still under the influence, the methamphetamine played a part in the accident. He also said that he did not think he fell asleep before the collision, but he did not know that for certain. Appellant said he would feel "grouchy, irritated" and his body was stiff and sore when he was coming off methamphetamine. He also said when he was using methamphetamine, he was "jumpy." Other witnesses, most significantly Appellant's wife, testified to Appellant's behavior while under the influence of the drug, saying he was "[p]aranoid. He's highly agitated. Could be erratic at times. Accusatory." She also testified to how Appellant would act when he was coming off methamphetamine, saying he "would easily fall asleep. You couldn't carry on a conversation with him. You would be talking to him and you would look over and he would be passed out, so basically, you would be talking to yourself."

Given the other testimony and evidence presented at trial concerning the effect that methamphetamine had on Appellant in particular, we cannot say the admission of Renson's opinion testimony, even if erroneous, affected Appellant's substantial rights. Accordingly, any error would have been harmless. Appellant's second issue is overruled.

---

[6] During the interview, Appellant admitted the positive result indicated the methamphetamine he had taken was still in his system.

[7] Appellant told the investigator he had used a "twenty" of methamphetamine nearly every day for a year.

**ISSUE THREE—SUFFICIENCY OF THE EVIDENCE TO SUPPORT MANSLAUGHTER CONVICTION**

In his third issue, Appellant challenges the sufficiency of the evidence to support his conviction for manslaughter. He first argues that without the blood evidence and related reports, there was not enough evidence to show Appellant operated a motor vehicle while under the influence of methamphetamine. He then argues that even considering the blood evidence and related reports, there is not a sufficient nexus between the evidence showing a 0.47 milligram per liter of blood concentration of the drug and the cause of the accident. Lastly, Appellant contends there was insufficient evidence to show he was towing a defective trailer or that the trailer in any way caused the accident.

In reviewing the sufficiency of the evidence, we consider all evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We defer to the fact finder's credibility and weight determinations because the fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 326. When the record supports conflicting inferences, "[w]e presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Brooks,* 323 S.W.3d at 922). This standard of review is the same for direct and circumstantial evidence cases. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). And, circumstantial evidence is as

11

probative as direct evidence in establishing the guilt of an accused. *Id.; Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). All evidence, even that improperly admitted, is considered in a sufficiency review. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

For purposes of reviewing the sufficiency of the evidence, a person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04 (West 2019). A person "acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." TEX. PENAL CODE ANN. § 6.03(c) (West 2019). Because an actor's mental state is something largely known only by the actor, the fact finder's determination of an actor's culpable mental state is generally grounded on inferences drawn from the circumstances and inferred from the acts, words, and conduct of the accused. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

As noted, a review of the sufficiency of the evidence includes review of all the evidence, properly and improperly admitted. *Clayton*, 235 S.W.3d at 778. Therefore, Appellant's argument that the evidence is insufficient to support his conviction without the blood evidence and accompanying reports has no application here.

We disagree with Appellant's assertion that the evidence does not support the jury's implicit finding that he operated a motor vehicle under the influence of

methamphetamine. The evidence before the jury showed that not long after the crash, a blood test revealed Appellant's methamphetamine level was 0.47 milligram per liter of blood and his amphetamine level was 0.10 milligram per liter of blood. Renson testified that 0.47 milligram per liter is a "medium amount" of drugs and that methamphetamine levels above 0.20 milligram per liter of blood "can be considered abuse." Renson also testified concerning the physical and psychological effects of methamphetamine use. A paramedic testified methamphetamine and a syringe were found in Appellant's socks while he was being treated in the ambulance. Emergency personnel also noted Appellant had scar tissue indicative of long-term intravenous drug use. Appellant made a statement to an emergency responder, saying not to "let one mistake ruin the rest of his life." And, when a paramedic asked whether Appellant had taken any drugs, Appellant responded "yes, meth, maybe a trace." An investigator testified he interviewed Appellant and, during that interview, Appellant admitted he had methamphetamine in his sock, that he had used methamphetamine forty-eight to twenty-four hours prior to the crash, that he was addicted to methamphetamine, and that methamphetamine played some role in the crash. The combined impact of this evidence was sufficient for the jury to infer Appellant recklessly operated his vehicle while under the influence of methamphetamine and that doing so caused the crash.

We also find Appellant's argument that the evidence was insufficient to support a finding that he was reckless by driving with a defective trailer to be unpersuasive. The investigating trooper testified the trailer Appellant was pulling was "a 1965 homemade vehicle." In his statement to the investigator, Appellant admitted he should not have been pulling the trailer because it would not "pull right." He also said the trailer had twice pulled

13

him into a ditch and that it pulled more when he drove over fifty-five miles per hour. Appellant further acknowledged it was reckless for him to pull that trailer in the rain, that he should have stopped when it first pulled him off the road, and that he should have left it on the side of the road. This too is sufficient evidence from which the jury could have found the requisite elements of the manslaughter offense.

On this record, we find the jury had before it sufficient evidence to prove each of the requisite elements of the offense of manslaughter. *See Porter v. State*, 969 S.W.2d 60, 64 (Tex. App.—Austin 1998, pet. ref'd) (finding evidence sufficient to support a conviction for manslaughter where the defendant admitted he should not have been driving, specimens taken at the hospital showed some controlled substances in the defendant's system, and a spoon and syringe were recovered from the defendant's person shortly after the accident). Accordingly, we find the evidence was sufficient to support Appellant's conviction for manslaughter and we resolve Appellant's third issue against him.

## CONCLUSION

Having overruled each of Appellant's issues, we affirm the judgments of the trial court.

Patrick A. Pirtle
Justice

Do not publish.

14