

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00146-CR
No. 07-21-00147-CR

---

**COLLIN LEE LOVELACE, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 223rd District Court
Gray County, Texas
Trial Court Nos. 11293, 11294, Honorable Phil N. Vanderpool, Presiding

---

September 7, 2022

## OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Collin Lee Lovelace, appeals from two convictions for the offense of manslaughter[1] and resulting sentences of eighteen years' incarceration and a $2,000 fine. We affirm the judgments.

---

[1] *See* TEX. PENAL CODE ANN. § 19.04.

BACKGROUND

On May 6, 2019, then-eighteen-year-old appellant drove a vehicle in the wrong direction on I-40 in Gray County, Texas. Appellant's vehicle collided, head-on, with a car driven by Fungisai Banda. The collision killed Banda and appellant's passenger, Jacob Frogge.

Appellant was indicted for two counts of manslaughter and bond was set at $1,000,000 on November 13, 2019. Appellant was arrested on December 2, 2019 and remained in custody until his trial began on June 21, 2021, a total of 567 days. On January 21, 2021, appellant filed motions for speedy trial specifically requesting that his trials be set on or before March 1, 2021.

The trial court held a teleconference hearing on the motions on February 23, 2021. Appellant's counsel noted that, while jury trials were limited by order of the Texas Supreme Court, jury trials could be held if the trial court were to receive a certification from the Office of Court Administration. In response, the trial court stated that "this court has followed the Supreme Court and Office of Court Administration guidelines and submitted its recertifications, as well as it's [sic] addendum to operating plan for jury trials, and part of that recertification is a requirement that the local health authority find that conditions are conducive to in-person proceedings." Without explicitly ruling on appellant's motions, the trial court stated that it would consider the motions and "see if we can't set this for a date certain at some[ ]time in the reasonable future."

On April 7, appellant filed applications for writ of habeas corpus seeking a bond reduction and again asserting his speedy trial claims. On April 22, the trial court entered

2

an order setting the cases for trial on June 21.  The trial court did not consider the habeas writ until the day of trial.  Before trial commenced, appellant re-urged his request for dismissal due to a violation of his speedy trial rights.  In response, the trial court advised that it would not dismiss on the basis of a violation of appellant's speedy trial rights "because we are today picking a jury, ready to try this case."

After trial, the jury returned a verdict finding appellant guilty on both counts of manslaughter.  The jury assessed appellant's punishment at eighteen years' confinement and a $2,000 fine.  Appellant filed a motion for new trial that was overruled by operation of law.  Appellant then timely filed notice of appeal.

Appellant presents two issues by his appeal.  By his first issue, appellant contends that he was denied his Sixth Amendment right to a speedy trial and that the trial court erred in denying his application for writ of habeas corpus seeking dismissal of the case. By his second issue, appellant contends that the State failed to establish beyond a reasonable doubt that appellant consciously disregarded a substantial and unjustifiable risk and, therefore, the evidence supporting his conviction is insufficient.  The State did not file a brief in these appeals.

## SPEEDY TRIAL RIGHTS CLAIM

By his first issue, appellant contends that he was denied his Sixth Amendment right to a speedy trial when the trial court denied his application for writ of habeas corpus that sought dismissal of the case.

3

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to a speedy trial.[2] U.S. Const. amend. VI; *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021). The right to a speedy trial attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The speedy trial right protects three interests of the defendant: (1) freedom from oppressive pretrial incarceration, (2) mitigation of the anxiety and concern that accompany public accusation, and (3) avoidance of impairment to the accused's defense. *Id.* The constitutional right is for a speedy trial, not dismissal of charges. *Id.* at 281. However, when it is determined that a defendant's speedy trial rights have been actually violated, the appropriate remedy is dismissal of the charging instrument with prejudice. *Id.*

To determine whether the right has been denied to an accused, a reviewing court balances factors described in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *See Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017). These *Barker* factors include the: (1) length of delay, (2) reasons for the delay, (3) defendant's assertion of his speedy trial right, and (4) prejudice, if any, suffered by the defendant due to the delay. *Barker*, 407 U.S. at 530; *Hopper*, 520 S.W.3d at 924. The State bears the burden of justifying the length of delay, while the defendant has the burden to prove he asserted his right and has been prejudiced. *Cantu*, 253 S.W.3d at 280.

---

[2] The Texas Constitution provides the same guarantee, *see* TEX. CONST. art. 1, § 10, but appellant's challenge is asserted only under the U.S. Constitution.

4

We apply a bifurcated standard of review in a speedy trial analysis: we assess factual determinations against an abuse of discretion standard and conduct a de novo review of legal determinations. *Lopez*, 631 S.W.3d at 113–14. Consequently, we give almost total deference to the trial court's findings of historical facts provided those facts are supported by the record. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). However, the balancing of the *Barker* factors is a purely legal question that we review de novo. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016).

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)); *see also Barker*, 407 U.S. at 530 (length of delay is "triggering mechanism" for analysis of remaining *Barker* factors). In other words, unless the court initially finds the delay unreasonable, the analysis ends. *Flowers v. State*, No. 07-21-00276-CR, 2022 Tex. App. LEXIS 5193, at *3 (Tex. App.—Amarillo July 26, 2022, no pet. h.) (mem. op., not designated for publication). There is, however, no set or defined period of time that has been held to constitute a per se violation of a defendant's speedy trial right. *Barker*, 407 U.S. at 530–31; *Cantu*, 253 S.W.3d at 281. Alleged violations are considered on a case-by-case basis and each case is considered on its own merits. *Barker*, 407 U.S. at 530–31; *Zamorano v. State*, 84 S.W.3d 643, 648–49 (Tex. Crim. App. 2002) (en banc). The length of delay that constitutes one that is presumptively prejudicial depends on the peculiar circumstances of the case. *Barker*, 407 U.S. at 530–31. For example, the delay

5

that can be tolerated for an ordinary street crime is considerably shorter than for a serious, more complex charge. *Id.*

In the present case, the length of time between appellant's arrest and trial was 567 days, or eighteen and a half months. This is a case in which appellant has been charged with double manslaughter. Accounting for the seriousness and complexity of the present case, we conclude that an eighteen-month delay is presumptively prejudicial. So, we will now turn to the remaining *Barker* factors.

The second factor is the reason for the delay. We do not ascribe equal weight to all reasons for delay: "an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; and a valid reason is not weighed against the State at all." *State v. Conatser*, 645 S.W.3d 925, 929 (Tex. App.—Dallas 2022, no pet.). During the hearing on appellant's motion for speedy trial, the State explained that appellant's trial was delayed because "there is a pandemic, and [appellant] is not the only person who's in line for a jury trial . . . ." At the time, emergency orders from the Texas Supreme Court were in place restricting a trial court's ability to conduct trials. *See Thirty-Third Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 179, 180 (Tex. 2021).[3] "Though it does not supersede constitutional mandate, a 'declaration of a state of disaster may [and did] impact the judiciary and its disposition of cases pending before it.'" *Flowers*,

---

[3] This Order authorizes limited in-person proceedings. It provides that, "4. Courts must continue to use all reasonable efforts to conduct proceedings remotely. Courts must not conduct in-person proceedings contrary to the *Guidance for All Court Proceedings During COVID-19 Pandemic* ("Guidance") issued by the Office of Court Administration, which may be updated from time to time, regarding social distancing, maximum group size, and other restrictions and precautions. Prior to holding any in-person proceedings, a court must submit an operating plan that is consistent with the requirements set forth in the Guidance."

2022 Tex. App. LEXIS 5193, at *4 (quoting *Ex parte Sheffield*, 611 S.W.3d 630, 635 (Tex. App.—Amarillo 2020, pet. granted) (mem. op., not designated for publication)). However, "a state of disaster alone cannot indefinitely pretermit enjoyment of the [speedy trial] right." *Ex parte Sheffield*, 611 S.W.3d at 635; *but see Conatser*, 645 S.W.3d at 930 ("Delay caused by the onset of a pandemic cannot be attributed as fault to the State."). Here, the only reason given by the State was that many trials, including appellant's, were delayed by the pandemic and the resulting emergency orders. Further, the applicable emergency order provided that in-person proceedings could be held after the trial court submitted an operating plan to the Office of Court Administration (OCA) that complied with OCA's guidance for conducting such proceedings. Thus, while the State's stated reason for the delay is a neutral reason, there existed an option that might have allowed the trial to have been held even during a pandemic. Consequently, this factor weighs slightly against the State.

The third factor is appellant's assertion of his speedy trial right. Appellant's assertion of his right to a speedy trial should be given "strong evidentiary weight" in our determination of whether he was deprived of that right. *Conatser*, 645 S.W.3d at 930. This is because a defendant does not have a responsibility to bring himself to trial. *Cantu*, 253 S.W.3d at 282. In the absence of a request for a speedy trial, we must assume that the defendant did not actually want one. *Balderas*, 517 S.W.3d at 771. The longer the delay between arrest and the assertion of the right, the more we can assume the defendant did not actually desire a speedy trial. *Id.* Here, appellant first asserted his right to a speedy trial fourteen months after his arrest. In his January 21 motions, appellant requested that his trial be set by March 1. This request afforded the trial court only 39

7

days to accomplish all of the requisites necessary to conduct a trial under the Texas Supreme Court's Emergency Order. We are also mindful that "the actual trial need not occur on the accused's timetable." *Ex parte Sheffield*, 611 S.W.3d at 635. While appellant did not initially request dismissal, he began requesting dismissal when the trial court failed to hold trial by appellant's deadline. As such, we conclude that appellant's assertion of his speedy trial rights weighs very slightly in his favor.

Finally, the fourth factor is the prejudice, if any, suffered by the defendant due to the delay. The defendant bears the burden of showing how the delay caused him prejudice. *Cantu*, 253 S.W.3d at 280. We assess this factor in light of the three interests the speedy trial right is intended to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Hopper*, 520 S.W.3d at 924. Appellant concedes that there is nothing in the record to support that the delay prejudiced him regarding the second or third dangers listed above. Thus, the prejudice he suffered derives solely from his pretrial incarceration. Appellant has not identified any significant prejudice caused by the delay. *See Conatser*, 645 S.W.3d at 931. However, while we acknowledge that appellant suffered some prejudice from his pretrial incarceration, such prejudice standing alone is not enough to support his claim that his speedy trial rights were violated. *See State v. Munoz*, 991 S.W.2d 818, 829 (Tex. Crim. App. 1999) (en banc) (seventeen-month pretrial incarceration was "minimal" prejudice); *Conatser*, 645 S.W.3d at 931 (two years on bond awaiting trial without more is no showing of "significant prejudice" making this factor "weigh heavily" against defendant); *Callender v. State*, No. 07-13-00069-CR, 2013 Tex. App. LEXIS 15057, at *3–5 (Tex. App.—Amarillo Dec. 12,

8

2013, no pet.) (mem. op., not designated for publication) (pre-trial incarceration for eleven months alone is not sufficient prejudice to support speedy trial claim); *Meyer v. State*, 27 S.W.3d 644, 650–51 (Tex. App.—Waco 2000, pet. ref'd) (twenty-three-month pre-trial incarceration and resultant anxiety alone is "minimal" showing of prejudice); *but see Ex parte Sheffield*, 611 S.W.3d at 635–36 ("one cannot reasonably dispute that this error [in denying defendant's speedy trial habeas writ] was harmful given the accused's lack of financial means to afford bail and his continuing incarceration."). Consequently, this factor does not support appellant's claim.

Finally, after looking at each of the *Barker* factors, we must weigh them to determine whether appellant's speedy trial rights were violated. Appellant's trial was delayed for approximately eighteen and a half months during which he remained incarcerated. The State asserted that the pandemic and the resulting emergency orders of the Texas Supreme Court precluded it from bringing this case to trial. Appellant did not assert his speedy trial claim until he had been incarcerated for approximately fourteen months and, when he did, he demanded a timetable for trial that was not entirely realistic under the circumstances. *Callender*, 2013 Tex. App. LEXIS 15057, at *6 ("The wheels of justice must be afforded a reasonable amount of time to turn, and the time taken here did not deny appellant a speedy trial when all circumstances are considered."). Furthermore, appellant has not shown that the delay caused him substantial prejudice. We conclude that appellant has failed to carry his burden to establish that he adequately asserted his right and that the delay caused him prejudice. *See Conatser*, 645 S.W.3d at 931 (appellant's failure to adequately assert right and show prejudice required reversal of trial court's grant of speedy trial motion); *Lemons v. State*, Nos. 10-21-00136-CR, 10-21-

9

00137-CR, 10-21-00138-CR, 10-21-00139-CR, 10-21-00140-CR, 10-21-00141-CR, 2022 Tex. App. LEXIS 2781, at *11–12 (Tex. App.—Waco Apr. 27, 2022, no pet.) (mem. op., not designated for publication) (affirming denial of speedy trial motion because delays were due to pandemic and appellant failed to identify how delay caused prejudice). Consequently, we overrule appellant's first issue.

## SUFFICIENCY OF THE EVIDENCE

By his second issue, appellant contends that the evidence supporting his convictions for manslaughter was insufficient. Specifically, appellant contends that the evidence did not establish that he was conscious of a substantial and unjustifiable risk and that such consciousness is a necessary element of manslaughter.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). When reviewing all the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 & n.26. In our review, we defer to the jury's credibility and weight determinations because the jury is the sole

10

judge of the witnesses' credibility and the weight to be given their testimony. *See id.* at 899. We must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a). "A person acts recklessly, or is reckless, . . . when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id.* § 6.03(c). The risk created "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* Recklessness requires the defendant to foresee the risk involved and consciously decide to ignore it. *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). "The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." *Dillon v. State*, 574 S.W.2d 92, 95 (Tex. Crim. App. 1978). However, a defendant need not be aware of the specific risk of another's death to commit manslaughter. *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd).

In his brief, appellant concedes that his driving on the wrong side of the highway created a substantial and unjustifiable risk. However, he contends that he did not consciously disregard that risk because he was not aware that he was driving on the wrong side of the highway.

11

Considering the evidence as a whole and in the light most favorable to the jury's verdict, we find it sufficient to support the jury's finding that appellant behaved recklessly when he consciously disregarded the risk of driving into oncoming traffic and caused the death of two people. Evidence was presented that, while there was some fog that morning, the area where the accident occurred was "mostly clear" or "clear as day." Responding officers noticed an overwhelming smell of alcohol coming from the car and lots of beer bottles and cans were found in the cab of the car. An open beer bottle was located in the driver's seat area of the car. Additionally, a blood test performed at the hospital revealed the presence of cannabis in appellant's system. While the State did not offer any evidence that appellant was intoxicated at the time of the accident, the jury could reasonably infer from the presence of alcohol in the vehicle, cannabis in appellant's blood, and appellant driving on the wrong side of the highway that appellant was impaired at the time of the accident. *See Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (reviewing court determines whether jury's inferences are reasonable based on evidence's cumulative force when viewed in the light most favorable to the verdict). Based on this evidence, the jury could reasonably conclude that appellant committed the offense of manslaughter. *See Sanders v. State*, No. 02-18-00539-CR, 2020 Tex. App. LEXIS 7209, at *15 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (evidence sufficient to support manslaughter conviction where evidence presented that appellant drove in wrong lane of highway and drank alcohol before accident, and appellant failed to offer evidence that she did not appreciate the risk); *Porter v. State*, 969 S.W.2d 60, 64 (Tex. App.—Austin 1998, pet. ref'd) (evidence sufficient to support manslaughter conviction where evidence presented that head-on collision occurred on victim's side of the road

12

and appellant chose to drive while fatigued and under influence of controlled substances). We overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the judgments of the trial court.

Judy C. Parker
Justice

Publish.